# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**KEITH ARRICK, SR.,**

        Plaintiff,

        v.                                        **Civil Action No.: 5:21-CV-213**
                                                      Judge Bailey

**UNITED STATES OF AMERICA,**

        Defendant.

## REPORT AND RECOMMENDATION

### I. Background

On November 5, 2021, plaintiff initiated this *pro se* civil action by filing a complaint under the Federal Tort Claims Act ("FTCA") in the United States District Court for the District of Columbia. The plaintiff is a federal inmate who at the time the allegations occurred was incarcerated at FCI Hazelton ("Hazelton") in Bruceton Mills, West Virginia. On December 29, 2021, the case was transferred to this Court. Because the Complaint was not on this Court's approved form, plaintiff was sent a Notice of Deficient Pleading. [Doc. 7]. On January 20, 2022, plaintiff filed an Amended Complaint on this Court's form. [Doc. 10]. However, because plaintiff did not comply with this Court's Local Rules, the Court issued a Notice of Intent to Strike Pleading [Doc. 14] and plaintiff re-filed his Complaint on February 28, 2022. [Doc. 16]. On May 20, 2022, the Court directed the United States to answer or otherwise plead. [Doc. 24]. On July 11, 2022, the Court granted a Motion to Amend, allowing plaintiff to add several exhibits to his Complaint. [Doc. 34]. Following a stay in the case, defendant filed a Motion to Dismiss on February

17, 2023. [Doc. 66]. This Court issued a **Roseboro** Notice on February 17, 2023, informing plaintiff of his right to respond. [Doc. 67]. On March 20, 2023, plaintiff filed a response to the Notice [Doc. 71] and on April 10, 2023, filed a response to the Motion, along with a Motion for Leave to Submit Response Due to Excusable Neglect. [Docs. 74 & 75]. The Court granted the Motion and directed that the response be filed. [Doc. 76]. The Motion is now fully briefed and ripe for decision. This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned recommends that the Motion be denied.

## II. The Pleadings

In his Amended Complaint, [Doc. 16], plaintiff brings two claims against the United States. First, he brings a claim for "Wilful (sic) Endangerment – Unsafe Drinking Water." [Doc. 16 at 6]. Plaintiff alleges that he and other inmates became ill with symptoms consistent with arsenic in the drinking water; he contends that Hazelton staff were told not to drink the water and that the facility later ordered inmates not to drink the water. [Id. at 6–7]. He alleges that his requests for sick-calls were ignored and that medical refused to treat him. [Id.]. He alleges that as a result he has suffered from blood in stool, diarrhea, rashes, an inability to pass urine, abnormal heart rhythm, tingling of fingers and toes, red and swollen skin, and psychological and emotional injuries. [Id. at 8]. For relief, he seeks $1,000,000 in damages and additional punitive damages. [Id.]. In an attached exhibit, plaintiff adds a claim under the Freedom of Information Act ("FOIA") alleging that the Bureau of Prisons ("BOP") has not complied with a FOIA request. [Doc. 16-1 at 3–5].

The undersigned notes that plaintiff later sought to amend his Complaint to add the FOIA claim among other exhibits, although the amended claim appears identical to the original. *See* [Doc. 34].

In its memorandum in support of its Motion to Dismiss, the Government argues that plaintiff's Complaint fails to state a plausible claim for relief. First, it argues that the Clean Water Act is inapplicable to this case. [Doc. 66-1 at 3]. Second, that the Safe Drinking Water Act is the relevant statute, but that plaintiff cannot state a claim under the Act because Hazelton is not a "supplier of water" as defined in the act. [Id.]. Third, it argues that plaintiff's claims are based on mere speculation and simply implausible. [Id. at 4–5]. Finally, the Government asserts that to the extent plaintiff is alleging a theory of negligence based upon a general duty of care owed to inmates, such a claim is barred by the discretionary function exception of the FTCA. [Id. at 5].

### III. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." **Republican Party of N.C. v. Martin**, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. **Mylan Labs, Inc. v. Matkari**, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007) (quoting ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)). In ***Twombly***, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." ***Conley***, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." ***Id***. (citations omitted), to one that is "plausible on its face," [***Id***. at 570], rather than merely "conceivable." ***Id***. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." ***Bass v. E.I. DuPont de Nemours & Co.***, 324 F.3d 761, 765 (4th Cir. 2003) (citing ***Dickson v. Microsoft Corp.***, 309 F.3d 193, 213 (4th Cir. 2002); ***Iodice v. United States***, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in ***Ashcroft v. Iqbal***, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. ***Id***.

The Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe plaintiff's pleadings. ***Estelle v. Gamble***, 429 U.S. 97, 106 (1976); ***Haines v. Kerner***, 404 U.S. 519, 520–21 (1972) (per curiam); ***Erikson v. Pardus***, 551 U.S. 89, 94 (2007). The mandated liberal construction means only that if the Court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. **Barnett v. Hargett**, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for him. **Small v. Endicott**, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." **Beaudett v. City of Hampton**, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. Analysis

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless Congress has waived the government's sovereign immunity and authorized suit under the FTCA. **Dalehite v. United States**, 346 U.S. 15, 30–31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. But by the 1940s, Congress was considering hundreds of such private bills each year. Critics worried about the speed and fairness with which Congress disposed of these claims.
> In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district

5

court. Federal courts have jurisdiction over these claims if they are actionable under § 1346(b).  A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[1]

**Brownback v. King**, 141 S. Ct. 740, 746 (2021) (internal citations and quotations omitted).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." **United States v. Muniz**, 374 U.S. 150 (1963).  The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action.  **Medina v. United States**, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." **Id**.

---

[1] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The undersigned notes that earlier versions of the Complaint, plaintiff's administrative remedy, and the parties briefing have framed the "unsafe drinking water" claim as one under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq*. and the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f *et seq*.  Insofar as plaintiff seeks to bring a claim under these statutes, the undersigned finds that plaintiff has failed to state a claim. First, the undersigned notes that while both the CWA and SDWA provide mechanisms by which an individual may bring suit, both statutes require that the individual provide notice to the Environmental Protection Agency prior to instituting the lawsuit.  *See* 33 U.S.C. § 1365(b)(1)(A); 42 U.S.C. § 300j–8(b)(1)(B); **Gaither v. United States**, No. 5:13-CV-108-RMG, 2014 WL 2155085, at *6 (D.S.C. May 22, 2014), *aff'd*, 585 F. App'x 150 (4th Cir. 2014).  Plaintiff has not offered any evidence that he has complied with those notice requirements and the claim, insofar as it is brought under these statutes, is subject to dismissal.  Further, as defendant points out, and plaintiff does not appear to dispute, the CWA concerns the concerns the discharge of pollutants into the waters of the United States and that statute is not relevant to plaintiff's claims.  In the motion to dismiss and plaintiff's response, the parties focus on whether Hazelton is a "supplier of water" under the SDWA.  A "supplier of water" is defined as "any person who owns or operates a public water system."  42 U.S.C. § 300f.  Plaintiff has not plausibly alleged that Hazelton owns or operates the public water system that supplies water to the prison facility and the Complaint has therefore not stated a claim under the SDWA.

However, while the undersigned finds that plaintiff has not stated a claim under the CWA or SDWA, the undersigned is skeptical of characterizing plaintiff's claim in this way. In his Amended Complaint, plaintiff characterizes his claim as "Wilful (sic) Endangerment

7

– Unsafe Drinking Water" and claims that he and other inmates displayed symptoms which he contends were consistent with arsenic poisoning; he alleges that Hazelton staff were told not to drink or use the water and that the prison began to sell bottled water for the first time. [Doc. 16 at 6–7]. Although plaintiff's administrative remedy characterized his claims as violations of the Clean Water Act and "Safe Water Act," the response to that claim from the Mid-Atlantic Regional Office did not construe the claim so narrowly. [Doc. 16-1 at 20–21]. As noted above, the Court is required to liberally construe *pro se* pleadings, and the undersigned finds that the Complaint can be reasonably read to assert a claim for negligence for failing to warn or treat plaintiff in relation to known contamination of the facility's drinking water.

Defendant argues that plaintiff's allegations "are based on mere speculation and are simply implausible;" defendant further argues that "Plaintiff has not alleged let alone proven, that the water he consumed, as reported, contained an unsafe level of contaminants; nor has Plaintiff alleged or shown that he sampled and tested the water allegedly made him sick." [Doc. 66-1 at 4–5]. Plaintiff has alleged that between June 2019 through March 2021 plaintiff and a number of other inmates became sick. [Doc. 16 at 6–7]. He alleges that during that time staff was told not to drink the water. [Id. at 7]. He alleges that during that period the commissary began to sell (presumably bottled) water and that in June 2020 the institution ordered inmates not to drink the (presumably tap) water and provided inmates with bottled water. [Id.]. Although the undersigned agrees with defendant that plaintiff's specific belief that he was suffering from arsenic poisoning appears to be based on nothing but plaintiff's speculation, the above allegations plausibly allege that Hazelton staff was aware of a contaminant in the drinking water. The

8

undersigned finds that at the motion to dismiss stage, plaintiff should not be required to show "that he sampled and tested the water" which allegedly contained contaminants.

Finally, the memorandum in support of the Motion ends with "Additionally, to the extent Plaintiff has alleged a negligence theory based upon a general duty of care owed to inmates, such a claim is barred by the discretionary function exception to the FTCA." [Doc. 66-1 at 5].

The Fourth Circuit has previously recognized that when the Government argues that the discretionary function exception applies, it is essentially an assertion that the court lacks subject matter jurisdiction. **Tyree v. United States**, 814 F. App'x 762, 766 (4th Cir. 2020). The discretionary function exception is codified in subsection (a) of the exceptions statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

In **Blanco Ayala v. United States**, 982 F.3d 209, 214–15 (4th Cir. 2020), the Fourth Circuit summarized the analysis which must be performed to determine whether the discretionary function exception bars an FTCA claim:

> To determine whether the exception applies, we must first ascertain whether the acts in question "are discretionary in nature," such that they "involv[e] an element of judgment or choice." **United States v. Gaubert**, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting **Berkovitz v. United States**, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The exception does "not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." **Berkovitz**, 486 U.S. at 536, 108 S.Ct. 1954.

9

Second, we must determine whether the challenged "governmental actions and decisions" were "based on considerations of public policy." *Id*. at 537, 108 S.Ct. 1954. When statutes, regulations, or agency guidelines grant discretion to a government agent, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. In conducting this analysis, we do not "inquire whether policy considerations were actually contemplated in making a decision." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002). Rather, we consider only whether "the nature of the challenged decision in an objective, or general sense, ... is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

As to the first prong articulated in *Blanco Ayala*, the Supreme Court has stated that "conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Further, "if the employee's conduct cannot appropriately be the product of judgment or choice then there is no discretion in the conduct for the discretionary function exception to protect." *Id*. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*).

Here, the Government has not articulated what conduct it contends involved an element of judgment or choice, and the undersigned finds that the Government has not shown that plaintiff's claim should be dismissed.

Finally, the undersigned notes that the Motion to Dismiss does not seek dismissal of plaintiff's FOIA claim.

## V. Recommendation

For the reasons set forth above, it is the undersigned's recommendation that

Defendant's Motion to Dismiss [**Doc. 66**] be **DENIED**.

The parties shall have **fourteen days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to plaintiff's last known address as reflected on the docket sheet.

**DATED**: April 19, 2023.

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE